Rakhee V. Patel
State Bar No. 00797213
Christina W. Stephenson
State Bar No. 24049535
Jason P. Kathman
State Bar No. 34070036
PRONSKE & PATEL, P.C.
2200 Ross Avenue, Suite 5350
Dallas, Texas 75201
(214) 658-6500 - Telephone
(214) 658-6509 – Telecopier
Email: rpatel@pronskepatel.com
Email: cstephenson@pronskepatel.com
Email: jkathman@pronskepatel.com

**PROPOSED COUNSEL FOR
DEBTORS AND DEBTORS IN POSSESSION**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| **CHI AUSTIN, LLC,** | § | **Case No. 10-30380-hdh-11** |
| | § | **Chapter 11** |
| | § | |
| **CHI CENTRAL, LLC,** | § | **Case No. 10-30381** |
| | § | **Chapter 11** |
| | § | |
| **CHI SOUTHWEST, LLC,** | § | **Case No. 10-30383** |
| | § | **Chapter 11** |
| | § | |
| **CHI MANAGEMENT, LLC,** | § | **Case No. 10-30392** |
| | § | **Chapter 11** |
| **Debtors.** | § | |

**EMERGENCY MOTION FOR AN INTERIM AND FINAL ORDER (I)
AUTHORIZING THE USE OF CASH COLLATERAL PURSUANT TO
SECTIONS 105, 361, 362, 363 AND 364 OF THE BANKRUPTCY CODE
AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 4001(B) AND
(II) GRANTING ADEQUATE PROTECTION TO THE
<u>PRE-PETITION SECURED LENDERS</u>**

**NO HEARING ON THIS MOTION WILL BE CONDUCTED UNLESS A WRITTEN RESPONSE IS FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT, WHOSE ADDRESS IS 1100 COMMERCE STREET, ROOM 12A24, DALLAS, TEXAS 75242, BY NO LATER THAN FEBRUARY 5, 2010, WHICH IS 21 DAYS AFTER THE DATE THIS MOTION IS SERVED.  ANY RESPONSE MUST BE IN WRITING AND TIMELY FILED WITH THE CLERK AND A COPY MUST BE TIMELY SERVED UPON (PROPOSED) COUNSEL FOR THE MOVING PARTY.  IF A RESPONSE IS FILED, A HEARING WILL BE HELD WITH NOTICE ONLY TO THE OBJECTING PARTY.  IF NO WRITTEN OBJECTION IS FILED TIMELY OR NO HEARING ON SUCH NOTICE IS REQUESTED TIMELY, THE RELIEF REQUESTED SHALL BE DEEMED UNOPPOSED, AND THE COURT MAY ENTER AN ORDER GRANTING THE RELIEF SOUGHT OR THE NOTICED ACTION MAY BE TAKEN. PRELIMINARY CONSIDERATION OF THIS MOTION IS ASKED AND THE COURT MAY GRANT THE REQUEST FOR A PRELIMINARY HEARING PENDING THE EXPIRATION OF THE 21-DAY NOTICE PERIOD.  IF THE COURT GRANTS THE REQUEST FOR A PRELIMINARY HEARING, NOTICE OF THE HEARING WILL BE PROVIDED.**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

CHI Central, LLC ("Central" or "Debtor"), debtor and debtor-in-possession, submits this motion (the "Motion") pursuant to Sections 105, 361, 362, 363 and 364 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et. seq.* (the "Bankruptcy Code"), and Rule 4001(b) of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rule" or "Bankruptcy Rules"), seeking an order from the Court (i) authorizing the use of cash collateral, if any, pursuant to sections 105, 361, 362, 363 and 364 of the Bankruptcy Code and Bankruptcy Rule 4001(b); and (ii) granting adequate protection to the pre-petition secured lender.  In support of this Motion, the Debtor respectfully represents as follows:

## I.      NOTICE OF PRELIMINARY HEARING

PLEASE TAKE NOTICE that a preliminary hearing on this Motion is set at **9:45 a.m., January 19, 2010**, before the Honorable Harlin D. Hale, in his/her courtroom located on the 14th

**EMERGENCY MOTION FOR AN INTERIM AND FINAL ORDER (I) AUTHORIZING THE USE OF CASH COLLATERAL PURSUANT TO SECTIONS 105, 361, 362, 363 AND 364 OF THE BANKRUPTCY CODE AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 4001(B) AND (II) GRANTING ADEQUATE PROTECTION TO THE PRE-PETITION SECURED LENDER – PAGE 2**

Floor of the Earl Cabell Building, United States Courthouse, 1100 Commerce Street, Dallas, Texas 75242.

## II.    JURISDICTION AND VENUE

1.    The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334(b).  This matter is a core proceeding and this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

2.    The statutory bases for relief requested herein are Sections 105, 361, 362, 363 and 364 of the Bankruptcy Code, and Bankruptcy Rule 4001(b).

## III.    BACKGROUND

3.    On January 15, 2010 (the "Petition Date"), the Debtors filed for bankruptcy protection under chapter 11 of the Bankruptcy Code.[1]  Pursuant to Sections 1107 and 1108 of the Bankruptcy Code, the Debtors are continuing to operate their businesses and manage their property as Debtors in possession.

**Debtors' Organizational Structure and Operations**

4.    CHI Austin, LLC ("Austin"), Central and CHI Southwest, LLC ("Southwest") (collectively the "Affiliated Debtors") are limited liability companies formed for the purpose of owning and operating several franchised restaurants.  CHI Management, LLC ("Management") is a limited liability company that manages the restaurants owned by the Affiliate Debtors.  On the Petition Date, each of the Affiliated Debtors and Management also filed voluntary petitions for protection under the Bankruptcy Code.  The Affiliated Debtors together with Management are referred to herein as "Debtors."  Collectively, the Debtors own and operate approximately 24

**EMERGENCY MOTION FOR AN INTERIM AND FINAL ORDER (I) AUTHORIZING THE USE OF
CASH COLLATERAL PURSUANT TO SECTIONS 105, 361, 362, 363 AND 364 OF THE BANKRUPTCY
CODE AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 4001(B) AND (II) GRANTING
ADEQUATE PROTECTION TO THE PRE-PETITION SECURED LENDER – PAGE 3**

stores predominately located in Austin, San Antonio and El Paso. The Affiliated Debtors own

the individual restaurants and Management manages the operations and the cash flows for all of

the Affiliated Debtors. In addition to operating the 24 stores, the Debtors continue to pay notes

related to stores that are now closed.

5. Overall, the Debtors, by and through Management, employ approximately 330

persons, on a part-time or full-time basis. However, certain locations are underperforming and

represent a significant drain on the Debtors' overall cash flow. In addition, during the 2009

holiday season, the Debtors saw a significant loss of cash flows due to inclement weather, which

greatly affected the fast food industry overall. As such, the Debtors were forced to file for

protection under the Bankruptcy Code on the Petition Date.

**Captec Financial Group Loan No. 9939**

6. On or about August 1, 2000, the Debtor entered into that certain Promissory Note &

Security Agreement (the "9939 Note") with Captec Financial Group, Inc. ("Captec Group")

whereby Captec Group agreed to loan funds to the Debtor. The original principal balance of the

9939 Note was $340,000.00. Sometime thereafter, Captec Group assigned all of its rights in the

9939 Note to Captec Financial Corporation ("Captec Corp."). Upon information and belief, Captec

Corp. is the owner and holder of the 9939 Note.

7. Regarding Captec Corp's security, the 9939 Note states as follows:

> **Collateral.** This Note and other obligations of Borrower to Lender are
> secured by one or more mortgages, deeds of trusts, security agreements
> and/or financing statements dated as of the Closing Date executed by
> Borrower for the benefit of Lender (the "Security Instruments"; together
> with any other documents securing payment under this Note, and any

---

[1] 11 U.S.C. §§ 101 *et. seq.*

**EMERGENCY MOTION FOR AN INTERIM AND FINAL ORDER (I) AUTHORIZING THE USE OF
CASH COLLATERAL PURSUANT TO SECTIONS 105, 361, 362, 363 AND 364 OF THE BANKRUPTCY
CODE AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 4001(B) AND (II) GRANTING
ADEQUATE PROTECTION TO THE PRE-PETITION SECURED LENDER – PAGE 4**

agreements relating hereto or executed in connection herewith, the "Loan Documents"). All property securing the Indebtedness (as defined in the Security Instruments) is referred to as the "Collateral."

8.    The Security Agreement executed in conjunction with the 9939 Note states as follows:

1.    **COLLATERAL**

(a)    **Grant of Security Interest.** Borrower grants Lender a security interest in all of Borrower's Inventory, Equipment, Instruments, Accounts and General Intangibles, each as defined in Section 1(b) below, whether now owned or hereafter acquired, together with all replacements, substitutions, and additions thereto (the "Collateral") which are (i) located on the premises of, or are related to the operation of, the Arby's restaurant operated by Borrower and located at 13376 Research Blvd., Austin, Texas 78750 (the "Franchised Operation"), or (ii) related to the Franchised Operation(s) and located at the principal business office of Borrower located at 3131 Turtle Creek, Suite 810, Dallas, Texas 75219. Also included as part of the Collateral are all proceeds and products thereof, including, without limit, insurance proceeds, stock rights, subscription rights, dividends, stock dividends, stock splits or liquidating dividends, and all cash, accounts, chattel paper and general intangibles arising from the sale, rent, lease, casualty loss or other disposition of the Collateral, and including any records or documents of title relating to the Collateral.

9.    Debtor believes the current balance of the 9939 Note is approximately $187,372.65.

10.    Captec Group and Captec Corp. shall collectively be referred to herein as "Lenders."

11.    Nothing herein constitutes an admission of the validity, priority and/or extent of Lenders' lien(s), and specifically whether any post-petition cash constitutes cash collateral. Debtor reserves the right to amend and/or supplement this Motion.

12.    Immediately prior to the filing of its chapter 11 petition, Debtor's operating bank account was located at Frost Bank, 2727 N. Harwood, Dallas, TX 75201-1570. Debtor's

operating account is not a lockbox account nor is any Lender allowed control of Debtor's

operating account.  As of January 14, 2010, the balance of Debtor's operating account was

$873.74.  Debtor asserts that cash held in Debtor's operating account is unencumbered and that

funds therein can be utilized in the ordinary course of Debtor's business without the need for

Court authorization

13.    As of the Petition Date, Debtor held approximately $1,300 in accounts receivable.

Upon payment of the accounts receivable, the payment would constitute Lenders' cash collateral,

assuming that Lenders hold a valid, perfected, enforceable lien on accounts receivable.

### IV.    MOTION TO DETERMINE APPLICABILITY OF 11 U.S.C. § 363(C)(2)

14.    11 U.S.C. § 363(c)(2) states as follows:

The trustee may not use, sell or lease cash collateral under paragraph (1)
of this subsection unless

or
(A) each entity that has an interest in such cash collateral consents;

(B) the court, after notice and a hearing, authorizes such use, sale,
or lease in accordance with the provisions of this section.

15.    Cash collateral, in turn, is defined as "cash, negotiable instruments, documents of

title, securities, deposit accounts, or other cash equivalents whenever acquired in which the

estate and an entity other than the estate have an interest."  11 U.S.C. § 363(a).

### V.    REQUEST FOR USE OF CASH COLLATERAL

16.    To the extent 11 U.S.C. § 363(c)(2) is applicable, the Debtor requires the use of

cash created from the use of its equipment (the "Cash Collateral") to indirectly pay the

reasonable and necessary operating expenses, including, but not limited to, salaries and payroll,

supplies, routine repair and maintenance expenses, taxes, and insurance, to minimally, preserve,

**EMERGENCY MOTION FOR AN INTERIM AND FINAL ORDER (I) AUTHORIZING THE USE OF
CASH COLLATERAL PURSUANT TO SECTIONS 105, 361, 362, 363 AND 364 OF THE BANKRUPTCY
CODE AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 4001(B) AND (II) GRANTING
ADEQUATE PROTECTION TO THE PRE-PETITION SECURED LENDER – PAGE 6**

and optimally, increase the value of the Debtor's collateral and the Debtor for the benefit of all

creditors, including the Lenders.

## A.      GROUNDS FOR RELIEF REQUESTED

17.      Section 363 of the Bankruptcy Code authorizes a debtor to use cash collateral if

those having an interest in such cash collateral consent or the court authorizes the use.  *See* 11

U.S.C. § 363(c)(2).   The use of cash collateral, however, may be prohibited or conditioned, upon

proper request, as is necessary to adequately protect any interest in cash collateral.  *See* 11

U.S.C. §363(e).  The burden, however, to demonstrate that the cash constitutes cash collateral

belongs to the party claiming an interest in that cash and is not the Debtor's burden to prove the

contrary.  *See* 11 U.S.C. § 363(o)(2).

18.      A court may authorize the use of cash collateral upon showing that those with an

interest in the cash collateral are adequately protected.  *See In re Harrington and Richardson,

Inc.*, 48 B.R. 431, 433 (Bankr. D. Mass. 1985); *In re Certified Corp.*, 51 B.R. 768, 770 (Bankr.

D. Hawaii 1985) ("It is well established that a debtor is entitled to use cash collateral upon proof

of adequate protection.").    Adequate protection requires examination of the creditor(s)'

aggregate collateral position, not simply protection of its lien on cash.  Adequate protection may

be provided by granting replacement or additional liens "to the extent [that the use of cash

collateral] results in a decrease in the value of [an] entity's interest in property." *See* 11 U.S.C. §

361(2).  Authorizing a debtor to use cash collateral on an interim basis is appropriate where, as

here, continuing the business as a going concern will cause the generation of inventory and

future revenues upon which the secured lender is granted replacement liens.  *See, e.g., In re*

**EMERGENCY MOTION FOR AN INTERIM AND FINAL ORDER (I) AUTHORIZING THE USE OF
CASH COLLATERAL PURSUANT TO SECTIONS 105, 361, 362, 363 AND 364 OF THE BANKRUPTCY
CODE AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 4001(B) AND (II) GRANTING
ADEQUATE PROTECTION TO THE PRE-PETITION SECURED LENDER – PAGE 7**

*Neise, Inc.,* 16 B.R. 600 (Bankr. D. Fla. 1981); *In re Certified Corp.*, 51 B.R. 768 (Bankr.D.

Hawaii 1985); *In re Post-Tron Systems, Inc.*, 106 B.R. 345 (Bankr.D.R.I. 1989).

19.     By authorizing the Debtor to use Cash Collateral, the Court will place the Debtor

in a position to indirectly fund its operating expenses, and to operate as a going concern for the

immediate future.  As explained in more detail in the *Emergency Motion of Debtor for an Order*

*Authorizing Continued Use of Existing (A) Cash Management System, (B) Bank Accounts, and*

*(C) Business Forms* the Debtor remits all funds it collects to Management's master depository

accounts.  Management then uses those funds in those depository accounts to fund the Debtor's

payroll, satisfy employee obligations, pay suppliers and other vendors, and meet other on-going

business obligations.   Thus, the Debtor needs to use Cash Collateral in order to allow

Management, *inter alia*, to fund payroll, satisfy employee obligations, pay suppliers and other

vendors, and meet other on-going business obligations.  Without the authority to use Cash

Collateral, the Debtor will be unable to fund its business operations in a manner that will allow

the Debtor to continue to operate as a going concern, all to the detriment of *all* of Debtor's

creditors, including the Lenders.

20.     Should the Debtor not be allowed to use Cash Collateral to fund its day-to-day

operations, not only would the Debtor, its employees and its customers be damaged, but also the

Lenders and the other creditors of the Debtor, including the pool of unsecured creditors.  A

denial of the use of Cash Collateral would cause immediate and irreparable harm to the

reputation, goodwill, and public confidence in the Debtor, a consequence that can only translate

into a drastic loss in value as a going concern in a highly competitive business.

**B.     OFFER OF ADEQUATE PROTECTION AND SUMMARY OF INTERIM CASH COLLATERAL ORDER**

21.     Attached to this Motion as **Exhibit A** is a proposed form of the Interim Cash

Collateral Order (the "Interim Cash Collateral Order"), that authorizes the Debtor's use of Cash

Collateral pending final hearing on this

Motion.   The Debtor is in the process of finalizing a two-week and four month budget that

itemizes the source and use of cash that will be provided at or before the hearing to approve the

Interim Cash Collateral Order.

22.     The offer of adequate protection for both the interim and final orders is as

follows:

a)     **Lenders will be granted a replacement lien in cash, subject to a determination by the Court that Lenders hold a fully perfected, enforceable pre-petition lien on cash, with the exceptions and provisions that follow, with the same priority as the Lenders' individual pre-petition liens, if any, and solely to the extent that the value of Lenders' collateral, on an aggregate basis, diminishes as a result of the use of Cash Collateral authorized by this Court;**

b)     **The replacement liens will not prime any validly attached and properly perfected lien held by a third party on specific property of the Debtor as of January 15, 2010, the Petition Date;**

c)     **The replacement lien will not attach to chapter 5 actions of the Debtor or the proceeds of the recovery upon such actions;**

d)     **Except for post-petition cash generated from operations, the replacement lien will not attach to any unencumbered property of the Debtor, if any, or the proceeds from any sale of any unencumbered property, and the proceeds from any sale of any unencumbered property shall be deposited into a separate unencumbered account and, absent further order of**

EMERGENCY MOTION FOR AN INTERIM AND FINAL ORDER (I) AUTHORIZING THE USE OF
CASH COLLATERAL PURSUANT TO SECTIONS 105, 361, 362, 363 AND 364 OF THE BANKRUPTCY
CODE AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 4001(B) AND (II) GRANTING
ADEQUATE PROTECTION TO THE PRE-PETITION SECURED LENDER – PAGE 9

the Court, shall not be subject to the Lenders' replacement lien;

e) Lenders' replacement lien shall attach to all bank accounts of the Debtor, except as provided in the immediately preceding subsections (c) and (d), until a determination by the Court that Lenders do not hold a fully perfected, enforceable pre-petition lien on cash. Lenders' alleged lien on any pre-petition cash in such account shall not be affected by the deposit and commingling of post-petition operating cash in such account, even if such post-petition operating cash is later determined by order to be unencumbered. Lenders' pre-petition cash collateral in such accounts shall be deemed "last out" of such accounts, except to the extent that any expense of the Debtor is surcharged by the Court against such pre-petition cash as allowed by section 506(c) of the Bankruptcy Code;

f) The replacement lien will attach only to the extent that cash used by the Debtor is ultimately determined by the Court to be Cash Collateral of Lenders;

g) The replacement lien will not apply to any reduction in cash value caused from the payment of an expense that is later surcharged against Lenders' collateral based on Section 506(c) of the Bankruptcy Code;

h) Subject to the limiting conditions on the replacement lien, the replacement lien will be binding upon any subsequently appointed chapter 11 or chapter 7 trustee;

i) The cash will be used to continue the operations of the Debtor and therefore maintain the going concern value of the aggregate of the Lenders' collateral; as such, the use of cash will be regulated by a pre-approved budget to assure that appropriate operating expenses are being paid and that no inappropriate expense is paid;

j) The cash will be used in part to maintain insurance on the Debtor's collateral and all other of the Debtor's assets;

k) The Debtor will provide to Lenders monthly cash flow reports, monthly operating reports, and monthly financial statements and schedules. These reports will allow Lenders to vigilantly

> monitor their collateral position and seek relief should it become necessary. The reports are to be provided on the 20th of each month for the prior calendar month; and

l)    The use of Cash Collateral may be terminated by the Court on motion, after notice and hearing, if the Court determines that Lenders are no longer adequately protected.

m)    Debtor intends to seek a provision in the final Cash Collateral Order providing a carve out for approved estate professionals, including but not limited to, Debtors' counsel, any counsel for a statutorily formed committee, as well as any United States' Trustee Fees.

23.    The Debtor believes that the terms of the Interim Cash Collateral Order are fair and reasonable under the circumstances. The Debtor asserts that the aggregate value of Lenders' alleged cash collateral will not diminish as a result of the use of cash in this case. The value of Lenders' alleged non-cash collateral will not diminish during the life of this case. The value of the Lenders' alleged interest in cash may fluctuate, but such value should not diminish, other than minimally, over the next 6 to 12 months, the projected life of this case.

24.    The Debtor believes that the Lenders are entitled to the protections set forth in the proposed Interim Cash Collateral Order. The adequate protection provisions have been drafted to provide protection without taking undue or inappropriate value from the Estate and its unsecured creditors.

25.    Given that the interests of Lenders will be adequately protected, it is in the best interest of the Debtor, its Estate, and all of its creditors for the Debtor to be able to continue operations and that the Debtor be authorized to use Cash Collateral, even without the Lenders' consent.

## VI.      NOTICE OF THIS MOTION

26.      No Chapter 11 trustee or creditors' committee has been appointed in this case as

of the filing of the Motion.  Notice of this Motion has been provided to the Office of the United

States Trustee, the Lenders, and the twenty largest unsecured creditors, via electronic means or

facsimile, if available or via United States First Class Mail if electronic means or facsimile are

unavailable, and any filed notices of appearance, which the Debtor submits is sufficient notice

under the circumstances and that no further notice is necessary.

## VII.     REQUEST FOR RELIEF

27.      The Debtor respectfully asks that it be authorized to use Cash Collateral for the

purposes of paying necessary business expenses as allowed by Section 363 of the Bankruptcy

Code, and that the Court grant the Lenders a replacement lien on post-petition assets, as allowed

by Sections 361, 363 and/or 364 of the Bankruptcy Code, consistent with the terms and

provisions contained in this Motion.  The Debtor requests that this relief be granted on both an

interim and final basis.   Relief is necessary on an interim basis to avoid immediate and

irreparable harm to the Debtor, its Estate, and all of its creditors, as previously asserted.  At the

preliminary hearing, the Debtor requests that the Court authorize use of Cash Collateral

according to the attached budget through the final hearing scheduled on the Motion, and that the

Court schedule a final hearing.  In the alternative, barring immediate interim authority to utilize

cash collateral, the Debtor requests that the Court authorize immediate use of Cash Collateral to

fund payroll, as requested in Debtor's *Emergency Motion to Pay Pre-Petition Wages* and to pay

Critical Vendors as requested in Debtor's *Emergency Motion for Authority to Pay or Honor*

*Prepetition Obligations to Certain Critical Vendors*.  At the final hearing, the Debtor asks that

**EMERGENCY MOTION FOR AN INTERIM AND FINAL ORDER (I) AUTHORIZING THE USE OF
CASH COLLATERAL PURSUANT TO SECTIONS 105, 361, 362, 363 AND 364 OF THE BANKRUPTCY
CODE AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 4001(B) AND (II) GRANTING
ADEQUATE PROTECTION TO THE PRE-PETITION SECURED LENDER – PAGE 12**

the Court authorize it to use Cash Collateral on a go-forward basis through the life of this case,

subject to such use being terminated by further order of this Court upon a finding that the

Lenders are no longer adequately protected.

WHEREFORE, PREMISES CONSIDERED, the Debtor respectfully requests the Court

(i) authorize the use of Cash Collateral pursuant to Sections 105, 361, 362, 363 and 364 of the

Bankruptcy Code and Bankruptcy Rule 4001(b); (ii) grant adequate protection to the pre-petition

secured lender; and (iii) grant such other relief and further relief as the Court may deem proper.

Dated: January 15, 2010                          Respectfully submitted

                                                 By: /s/ Rakhee V. Patel_____
                                                 Rakhee V. Patel
                                                 Texas Bar No. 00797213
                                                 Christina W. Stephenson
                                                 Texas Bar No. 24049535
                                                 Jason P. Kathman
                                                 Texas Bar. No. 24070036
                                                 PRONSKE & PATEL, P.C.
                                                 2200 Ross Avenue, Suite 53500
                                                 Dallas, Texas 75201
                                                 Telephone: 214.658.6500
                                                 Facsimile: 214.658.6509
                                                 Email: rpatel@pronskepatel.com
                                                 Email: cstephenson@pronskepatel.com
                                                 Email: jkathman@pronskepatel.com

                                                 **PROPOSED COUNSEL FOR
                                                 DEBTORS AND DEBTORS IN POSSESSION**

**EMERGENCY MOTION FOR AN INTERIM AND FINAL ORDER (I) AUTHORIZING THE USE OF
CASH COLLATERAL PURSUANT TO SECTIONS 105, 361, 362, 363 AND 364 OF THE BANKRUPTCY
CODE AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 4001(B) AND (II) GRANTING
ADEQUATE PROTECTION TO THE PRE-PETITION SECURED LENDER – PAGE 13**

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that, on January 15, 2010 I caused to be served the foregoing pleading upon the parties on the Master Service List attached hereto via the Court's electronic transmission facilities and/or United States mail, first class delivery.

/s/ Jason P. Kathman
Jason P. Kathman

**EMERGENCY MOTION FOR AN INTERIM AND FINAL ORDER (I) AUTHORIZING THE USE OF CASH COLLATERAL PURSUANT TO SECTIONS 105, 361, 362, 363 AND 364 OF THE BANKRUPTCY CODE AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 4001(B) AND (II) GRANTING ADEQUATE PROTECTION TO THE PRE-PETITION SECURED LENDER – PAGE 14**